IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORRIN T. SKRETVEDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 98-61 (MPT) |
| | ) | |
| E. I. DU PONT DE NEMOURS AND COMPANY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY'S
SUPPLEMENTAL ANSWERING BRIEF**

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street, P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000

Evelyn H. Brantley (#3380)
E. I. du Pont de Nemours and Company
DuPont Legal, D7146
1007 Market Street
Wilmington, Delaware 19898
(302) 773-0369

*Attorneys for Defendant
E. I. du Pont de Nemours and Company*

Dated: September 15, 2006
748804/2120-178

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTS ........................................................................................................................................... 2

ARGUMENT ................................................................................................................................. 4

I.   PREJUDGMENT INTEREST ON INCAPABILITY BENEFITS. ................................... 4

   A.   If the Court Awards Prejudgment Interest On Incapability Benefits,
        Plaintiff Should Not Receive Interest For The Time Period Covering
        His Delay In Bring Suit ........................................................................................... 4

   B.   If The Court Awards Prejudgment Interest On Incapability Benefits,
        The Pension Plan's Formula for Calculating Interest Controls .............................. 4

   C.   Plaintiff Relies On A Faulty Methodology To Calculate Prejudgment
        Interest On His Incapability Benefits ...................................................................... 6

II.  INTEREST ON T&P DISABILITY BENEFITS .............................................................. 7

   A.   If The Court Awards Plaintiff Interest On His T&P Benefits, It Should
        Use The Short-Term Borrowing Rates Paid By DuPont During
        The Relevant Time Period ....................................................................................... 7

   B.   Plaintiff Relies On A Faulty Methodology To Calculate Interest
        On His T&P Benefits ............................................................................................... 9

III. POST JUDGMENT INTEREST ..................................................................................... 10

   A.   Plaintiff Is Not Entitled To Post Judgment Interest At This Time ...................... 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page

*Eaves v. County of Cape May,*
    239 F.3d 527 (3d Cir. 2001)..............................................................................11

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*
    213 F.3d 124 (3d Cir. 2000)................................................................................7

*Skretvedt v. E. I. du Pont de Nemours & Co.,*
    268 F.3d 167 (3d Cir. 2001)...........................................................................2, 4

*Skretvedt v. E. I. du Pont de Nemours & Co.,*
    372 F.3d 193 (3d Cir. 2004)..............................................................4, 5, 8, 11

*Sun Ship, Inc. v. Matson Navigation Co.,*
    785 F.2d 59 (3d Cir. 1986..................................................................................5

Employee Retirement Income Security Act,
    29 U.S.C. §§ 1001 *et. seq.*................................................................................2

28 U.S.C. § 1961..................................................................................................5, 10

## PRELIMINARY STATEMENT

This matter is presently before the Court following remand from the Third Circuit Court of Appeals to consider whether Plaintiff is entitled to prejudgment interest on the award of incapability benefits and/or interest on the delayed payment of T&P benefits. The legal issues have been briefed before the Court, and each party has presented its position regarding how much, if any, interest Plaintiff should receive. This supplemental briefing was sought by the Court in order to clarify the parties' respective interest calculations in conformance with the Third Circuit's decision. Plaintiff's method of calculating prejudgment interest on his incapability benefits (supported by a never before identified "paraprofessional" apparently from an accounting firm in Virginia) is fundamentally inconsistent with the Third Circuit's directives and analysis. Plaintiff's profound misunderstanding of the Court's constructive trust theory is underscored by his attempt to superimpose that theory on the calculation of prejudgment interest on a judgment obtained pursuant to a federal statute. In such cases, the defendant is not required to "disgorge" any profits. In any event, Plaintiff's analysis is fundamentally unfair and inconsistent because it seeks to reap the rewards of the Pension Plan's investment acumen in positive income years, but avoid the pitfalls in years where there was a shortfall.

Furthermore, Plaintiff's Supplemental Brief does little to cure the errors of his calculation of interest on the delayed T&P benefits. Plaintiff continues to rely on an arbitrary number he offers, without sufficient foundation, as DuPont's rate of return on investments, even though the rate he proposes is not an *actual* rate of return. Plaintiff bears the burden of proof on this issue, and he has failed to articulate any logical, reliable basis for his proposal.

Finally, as the Third Circuit specifically recognized, Plaintiff is not entitled to any post judgment interest at this time.

## FACTS

The facts of this case have been fully recited in prior briefing and decisions from this Court and the Third Circuit Court of Appeals. For purposes of the interest issues presently before the Court, the relevant facts are as follows.

Plaintiff Orrin Skretvedt ("Skretvedt" or "Plaintiff") was employed by E. I. du Pont de Nemours and Company ("DuPont") from June 28, 1974 until his termination on February 7, 1995. On or about October 1, 1995, Skretvedt applied for long-term disability benefits under DuPont's incapability provision of the Pension Plan ("Incapability benefits") and DuPont's Total and Permanent Disability Plan ("T&P benefits"). On May 23, 1996, the DuPont Board of Benefits and Pensions denied Skretvedt's application for both Incapability and T&P benefits. *See Skretvedt v. E. I. du Pont de Nemours & Co.*, 268 F.3d 167, 170, 172 (3d Cir. 2001) ("*Skretvedt I*").

Nearly two years later, on February 4, 1998, Plaintiff filed this suit under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), claiming, among other things, that DuPont arbitrarily and capriciously denied his application for long term disability benefits. (D.I. 1.) This Court granted summary judgment in favor of DuPont on September 6, 2000. (D.I. 120.) That decision was reversed by the Third Circuit in an opinion dated October 5, 2001, in which the Third Circuit ordered that Plaintiff be awarded Incapability benefits under DuPont's Pension Plan. *Skretvedt I*, 268 F.3d at 184-185. The Third Circuit also remanded the case to the District Court with directions to allow DuPont's Board of Benefits and Pensions to consider the T&P claim in the first instance, since even though the Court found Skretvedt incapable of performing the duties of his previous position at DuPont, he could "nevertheless be ineligible for T&P benefits." *See Skretvedt I*, 268 F.3d at 184-85.

2

On remand, this Court entered an order on December 13, 2001 granting Skretvedt Incapability benefits. (D.I. 135.) Skretvedt was notified on March 6, 2002, by Aetna, the administrator of the T&P plan, that his application for T&P benefits had also been (voluntarily) granted. Under the terms of the relevant plans, Skretvedt was entitled to receive a monthly Incapability benefit of $1,775.00 and a monthly T&P benefit of $1,624.00. (A52, A55.)[1] On February 6, 2002, Skretvedt began receiving his monthly Incapability benefits, and was paid the value of his past benefits. Plaintiff began receiving a monthly T&P benefit on March 6, 2002, and was also paid the value of his past benefits at that time, dating back to 1995. The initial notification advised Skretvedt that his T&P benefits would commence effective as of September 14, 1995; he was subsequently advised by letters dated April 15 and 16, 2002 that earlier communications had been in error and that his benefits would commence effective as of February 8, 1995, and he was paid accordingly. (A59.)

---

[1] All references to "A__" herein are to Plaintiff's Supplemental Brief Appendix (D.I. 206).

## ARGUMENT

I. PREJUDGMENT INTEREST ON INCAPABILITY BENEFITS.

    A. If the Court Awards Prejudgment Interest On Incapability Benefits, Plaintiff Should Not Receive Interest For The Time Period Covering His Delay In Bring Suit.

Plaintiff admits that the DuPont Board of Benefits and Pensions denied his application for Incapability and T&P benefits on May 23, 1996. (*See* A1.) It is also undisputed that Plaintiff did not file suit in this Court until February 4, 1998. (D.I. 1.) That 21-month delay is solely attributable to Skretvedt. He had retained counsel and could have filed suit at any time following the Board's May 23 decision. He did not. DuPont should therefore not be forced to pay Skretvedt prejudgment interest for that period of time.[2]

Moreover, in no event should Plaintiff be entitled to prejudgment interest before October 1, 1995 – the date he first applied for disability benefits. *See Skretvedt I*, 268 F.3d at 172.

    B. If The Court Awards Prejudgment Interest On Incapability Benefits, The Pension Plan's Formula For Calculating Interest Controls.

*Skretvedt II* made clear that Plaintiff's request for prejudgment interest on his Incapability benefits is "no more than an ordinary request for prejudgment interest on a judgment obtained pursuant to a federal statute." *Skretvedt v. E. I. du Pont de Nemours & Co.*, 372 F.3d 193, 205 (3d Cir. 2004) ("*Skretvedt II*"). The constructive trust theory developed by the Court with regard to interest on delayed T&P benefits that were voluntarily paid is not applicable to Plaintiff's Incapability benefits. Likewise, Plaintiff's argument that DuPont is required to "disgorge" any

---

[2] DuPont's position, as outlined in its Answering Brief on Remand (D.I. 198), is that Plaintiff is not entitled to prejudgment interest on his Incapability benefits because DuPont's denial of benefits in the course of the administrative process was not wrongful.

4

gains it received by delaying payment of his Incapability benefits is unsupportable and contrary to the Third Circuit's clear directives.

In federal question cases, the rate of prejudgment interest is committed to the broad discretion of the District Court. *Skretvedt II*, 372 F.3d at 208. In exercising that discretion, the court may be guided by the rate for post judgment interest set out in 28 U.S.C. § 1961. *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986) (cited by *Skretvedt II*, 372 F.3d at 208). Pursuant to Section 1961, prejudgment interest on Plaintiff's incapability benefits would be calculated at a fixed rate of 2.17%, the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment, December 13, 2001. *See* 28 U.S.C. § 1961(a). The result, compounded annually and accumulating from February 4, 1998 to December 13, 2001[3], would be $4,517.56, considerably less than the results using DuPont's methodology. (*See* Spreadsheet attached as Exhibit A-1. For results if a start date of 10/1/95 is used, *see* Spreadsheet attached as Exhibit A-2).

As explained in DuPont's Answering Brief on Remand, a better, more consistent approach in this case would be to follow the Pension Plan's established policy regarding the payment of interest to plan participants whose benefits are delayed through no fault of the participant. In such cases, the Pension Plan pays interest on the delayed benefit payments using a simple interest rate formula and an interest rate equal to 120% of the federal mid-term rate as of January of the year in which the delay occurred and benefits should have been paid. (*See* Porter Affidavit, D.I. 199.)[4]

---

[3] *Pre*judgment interest should cease to accumulate on the date that judgment was entered in this case, or December 13, 2001. (D.I. 135)
[4] In response to the Court's request, attached as Exhibit B are the revenue rulings showing the appropriate mid-term rate for the years 1995-1998.

5

The applicable rates are as follows:

| 1995 | 9.54% |
|------|-------|
| 1996 | 6.89% |
| 1997 | 7.34% |
| 1998 | 7.13% |
| 1999 | 5.59% |
| 2000 | 7.47% |
| 2001 | 6.75% |

Multiplying these rates times Plaintiff's annual incapability benefit amount, $21,300.00 ($1,775 x 12) yields a total prejudgment interest award of **$5,521.69**[5], assuming interest will begin to accumulate on the date the suit was filed, February 4, 1998. (*See* Spreadsheet Exhibit C-1. For results if a start date of 10/1/95 is used, *see* Spreadsheet attached as Exhibit C-2.)

C. Plaintiff Relies On A Faulty Methodology To Calculate Prejudgment Interest On His Incapability Benefits.

In addition to the fact that Plaintiff confuses the Third Circuit's analysis of his interest claim for T&P benefits with that of the prejudgment interest calculation for Incapability benefits, Plaintiff uses faulty logic in arriving at DuPont's "return on investment." Relying on DuPont's

---

[5] In response to the Court's request for "background data" supporting DuPont's interest calculations, DuPont is providing the attached spreadsheets as Exhibits A through D. While close to the exact sums contained in DuPont's Answering Brief on Remand, the sums identified in the spreadsheets are not identical to those sums. These differences are not material and, in any event, all of the calculations supporting the sums identified in this Answering Brief are fully supported by the calculations set forth in the attached spreadsheets. Moreover, the methodology is the same and the attached exhibits provide the Court with a means of replicating DuPont's analysis.

6

Summary Annual Reports, Plaintiff argues that the ratio of earnings (*i.e.*, income) to beginning of the year investment indicates DuPont's return on investment for the year. Such a result does not make the Plaintiff whole – it awards him a staggering windfall. There is no evidence, and indeed it seems contrary to common sense, to suggest that Plaintiff would have had a similar return on investment as the Pension Plan had he invested his monthly incapability benefits. *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 132-33 (3d Cir. 2000) (approving the District Court's opinion that "it would be 'highly speculative' to simply assume that Appellants would have invested their benefits in higher-risk, higher-yield securities, and that to so assume would be to reward them for risks they did not take.") Plaintiff not only seeks to capture the benefit of the Pension Plan's investment expertise in positive income years, without any effort, but he seeks to avoid the market pitfalls that the Plan also experienced. For instance, in his Supplemental "Table I," Plaintiff includes a return on investment of 2.20% for 2001. (*See* A5.) In 2001, however, the Plan actually *lost* $373,000,000. (*See* 2001 Annual Report, attached as Exhibit E.)

II. <u>INTEREST ON T&P DISABILITY BENEFITS.</u>[6]

    A. <u>If The Court Awards Plaintiff Interest On His T&P Benefits, I Should Use The Short-Term Borrowing Rates Paid By DuPont During The Relevant Time Period.</u>[7]

As explained in DuPont's Answering Brief on Remand, during the relevant time period, DuPont was a net borrower, meaning that the value to DuPont (if any) of retaining Plaintiff's

---

[6] DuPont's position is that Plaintiff is not entitled to interest on his T&P Benefits, as outlined in its Answering Brief on Remand. DuPont provides these calculations for use only in the event the Court determines that an interest award is appropriate.

[7] The relevant time period should be the date Plaintiff filed suit, February 4, 1998, to the day he began receiving T&P benefits, or March 6, 2002.

7

T&P benefits was that the amount of money it had to borrow to meet its normal operating expenses was less than it might have been had DuPont paid Plaintiff the benefits. Although this methodology is somewhat hypothetical, as there is no evidence that the additional $19,488[8] a year made any real difference to DuPont's bottom line, it is tied to a true measure of DuPont's financial position. By decreasing the amount of money DuPont had to borrow, DuPont arguably saved money on the interest, based on its short-term borrowing rates, it would have otherwise paid. The short-term borrowing rates that DuPont paid during the time in question were publicly available in DuPont's annual financial disclosures, and are as follows:

| | |
|---|---|
| 1995 | 6.10% |
| 1996 | 6.00% |
| 1997 | 5.90% |
| 1998 | 5.40% |
| 1999 | 6.00% |
| 2000 | 6.80% |
| 2001 | 7.60% |
| 2002 | 3.50% |

(*See* Porter Affidavit, Ex. 1 (D.I. 199)[9]). As the Third Circuit explained, "the actual gain (if any) made [by DuPont] on withheld benefits would be an appropriate subject of a constructive trust." *Skretvedt II*, 372 F.3d at 215 (*citing* Dobbs § 4.3(2), at 592 ("The constructive trust has [an] especially important characteristic[:] ... under the rules for following property or money into its

---

[8] Plaintiff's monthly T&P benefit is $1,624, multiplied by 12 that equals $19,488.00.
[9] Attached as Exhibit F are excerpts from DuPont's Annual Reports showing the appropriate short-term borrowing rates for the years 1995-1998.

8

product, the plaintiff may obtain ... gains received by the defendant from the property's increase in value ....")). DuPont's reliance on short term borrowing rates is as true a measure of its actual gain on the withheld benefits as is possible, since there was not a designated account for Plaintiff's benefits.

Using the above short-term borrowing rates, the total amount of interest on Plaintiff's T&P benefits, compounded annually, is **$16,902.62**. (*See* Spreadsheet Exhibit D-1. For results if a start date of 10/1/95 is used, *see* Spreadsheet attached as Exhibit D-2.)

    B.    <u>Plaintiff Relies On A Faulty Methodology To Calculate Interest On His T&P Benefits.</u>

Plaintiff continues to argue that his fictional "internal rate of return" should form the basis of this Court's interest award on his T&P benefits. Plaintiff's proposed "IRR" is not supported by record evidence and is simply an arbitrary number, apparently designed to maximize Plaintiff's interest award.

DuPont's Investment Proposal Manual is exactly what the title implies, an internal guideline for DuPont managers that outlines the standard for financial analysis of investment proposals and provides guidance on how to obtain authorization for commitments of capital. (*See* Malmberg Dep. p. 8; A21.) The Manual includes several examples, or hypotheticals, which are used to demonstrate the concepts. (*See* Malmberg Dep. p. 16; A23.) The Manual does *not* purport to establish what DuPont's actual rate of return on any particular project is, or even what its average rate of return is. Mr. Malmberg's deposition testimony bears this out. Plaintiff's counsel repeatedly refers to examples provided in the Manual as if they represent actual projects and actual rates of return – they clearly do not and Mr. Malmberg repeatedly corrected Plaintiff's counsel on this point. (*See* Malmberg Dep. p. 16, 17, 19, 27, 34, 35; A23, A24, A26, A28.) Even the examples are only examples of forecasts of rate of return; there is no evidence that an

investment will satisfy the forecasts. Indeed, Mr. Malmberg testified that, generally, forecasts are not accurate. (*See* Malmberg Dep. p. 6; A21.)

The only evidence in the record is that 25% is *not* a standard rate of return for DuPont. (*See* Malmberg Dep. p. 26; A26.) It is merely one example in the Manual. (*Id.* at p. 27) Moreover, the Manual's examples (upon which Plaintiff relies so heavily) include examples where 18% or 21% rates of return were considered "favorable," leaving no doubt that Plaintiff's 25% mark is a completely arbitrary and inflated number designed to maximize Plaintiff's prejudgment interest claim. (*See* Malmberg Dep. p. 29, 33; 34; A27, A28.)

Finally, DuPont has no obligation to establish its actual "internal rate of return," if such a number even exists. Plaintiff bears the burden of proof, and it is his responsibility to produce evidence in support of his interest claim. Arguing that hypotheticals in an internal DuPont "how to" manual represent actual numbers that should bind DuPont does not satisfy his burden. On the contrary, DuPont's proposed methodology, relying on its actual, published short-term borrowing rates, is a real measure of DuPont's financial position and is the best guess of what it gained from the funds not paid to Plaintiff for T&P benefits.

III.  POST JUDGMENT INTEREST.

    A.  Plaintiff Is Not Entitled To Post Judgment Interest At This Time.

The federal post judgment interest statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. Plaintiff could arguably be entitled to post judgment interest on any award of interest and prejudgment interest this Court eventually orders (should DuPont delay in making payment as ordered), but that is obviously impossible of calculation at this point. Conceivably, Plaintiff could also be

10

seeking post judgment interest to the extent DuPont delayed in paying his Incapability benefits after the Court's December 13, 2001 judgment (a period of less than 2 months, until February 6). No judgment exists with respect to T&P benefits, however, so "there is no basis for an award of post judgment interest under § 1961 with respect to these benefits." *See Skretvedt II*, 372 F.3d at 216, n31.

Moreover, as the Third Circuit explained, Plaintiff is not entitled to post judgment interest during the two-month delay in receiving his incapability benefits because there was no "money judgment." *Id.* at 217. Section 1961(a) requires that a "money judgment" be entered, which "requires that the judgment at issue award a fixed amount of fees to the prevailing party in order to trigger the post-judgment interest period." *Id.*, citing *Eaves v. County of Cape May*, 239 F.3d 527, 534 (3d Cir. 2001). The Court's December 13, 2001 judgment did not quantify a monetary amount. Accordingly, post judgment interest under Section 1961 did not begin to accrue on that date because no "money judgment" had been entered. *Id.* Plaintiff is therefore not entitled to any award of post judgment interest at this time.

## CONCLUSION

For the foregoing reasons, DuPont respectfully requests that the Court decline to award Plaintiff any prejudgment interest. If the Court determines that a prejudgment interest award is appropriate, DuPont respectfully requests that the Court use the methodology DuPont proposes and award Plaintiff prejudgment interest on his Incapability benefits in the amount of $5,521.69 and interest on his T&P benefits in the amount of $16,902.62. Finally, DuPont respectfully requests that the Court delay addressing the issue of post judgment interest until it enters an

11

award, if any, with respect to Plaintiff's claims for interest and after Plaintiff files a timely motion for post judgment interest.

        Respectfully submitted,

        POTTER ANDERSON & CORROON LLP

By  */s/ Sarah E. DiLuzio*
      Kathleen Furey McDonough (#2395)
      Sarah E. DiLuzio (#4085)
      Hercules Plaza 6th Floor
      1313 N. Market Street, P.O. Box 951
      Wilmington, Delaware 19899
      (302) 984-6000

      Evelyn H. Brantley (#3380)
      E. I. du Pont de Nemours and Company
      DuPont Legal, D7146
      1007 Market Street
      Wilmington, Delaware 19898
      (302) 773-0369

*Attorneys for Defendant
E. I. du Pont de Nemours and Company*

Dated: September 15, 2006

12

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify this 15th day of September, 2006, that the foregoing **DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY'S SUPPLEMENTAL ANSWERING BRIEF** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) which will send notification of such filing that the document is available for viewing and downloading via CM/ECF to the following counsel of record:

    John M. Stull, Esquire
    1300 North Market Street, Suite 700
    P.O. Box 1947
    Wilmington, Delaware 19899

    /s/ Sarah E. DiLuzio
    Sarah E. DiLuzio (No. 4085)
    Hercules Plaza – Sixth Floor
    1313 North Market Street
    Wilmington, DE 19801
    (302) 984-6044 (Telephone)
    (302) 658-1192 (Facsimile)
    sdiluzio@potteranderson.com

748804